USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY MATTEO,

                Plaintiff,

-against-

SUPERINTENDENT ADA PEREZ, OF THE
DOWNSTATE CORRECTIONAL FACILITY,

                Defendant.

No. 16-CV-1837 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Anthony Matteo, a former state prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to Title 42, United States Code, Section 1983,[1] claiming that his Eighth and Fourteenth Amendment rights were violated during his three-month incarceration at the Downstate Correctional Facility ("Downstate"). Downstate is a prison facility operated by the New York State Department of Corrections and Community Supervision ("DOCCS").[2] Plaintiff is suing Defendant Ada Perez, Superintendent of Downstate, in her official capacity, for failing to provide him with sufficient heat and hot water between January and March 2016. Defendant moves to dismiss the Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff did not file a response[3] and is seeking only monetary

---

[1] Plaintiff seeks relief for violation of his constitutional rights pursuant to 42 U.S.C. § 1983, which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

[2] (*See* Def.'s Mem. Law. Supp. Mot. To Dismiss Compl. (ECF No. 16) ("Def.'s Mem.") at 1).

[3] As of October 4, 2016, the Court deemed Defendant's motion unopposed. (*See generally* ECF No. 14.) The Court notes that it has not, to date, received any correspondence regarding Plaintiff's opposition or intentions on how to proceed.

Copies mailed/faxed 9/19/2017
Chambers of Nelson S. Román, U.S.D.J.

damages.[4] For the reasons discussed below, Defendant's motion is GRANTED.

## BACKGROUND

The following facts – which are taken from the Complaint, materials it incorporates, and matters of which the Court may take judicial notice – are construed in the light most favorable to Matteo, as he is the non-moving party. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). Plaintiff was incarcerated at Downstate during the events described in the Complaint. (*See* Complaint ("Compl.") (ECF No. 2) at 2.)

From January 8, 2016, to March 11, 2016 (almost two months exactly),[5] while a detainee at Downstate in Fishkill, New York, Plaintiff was forced to remain in a cell without heat and take "ice" cold showers, ultimately resulting in his illness. (*Id*. at 2-3.) Plaintiff alleges that because he was aware that the correctional facility's grievance procedure covered heat and hot water claims, he filed his level 1 grievance on February 12, 2016, with the Downstate "Grievance Clerk." (*Id*. at 3, 9-10.) Plaintiff's grievance described that the lack of heat in his cell was made "unbearable" (*id*. at 9), by the "extremely freezing air," (*id*.), entering through the window in his cell. In addition, Plaintiff complained about the lack of hot water in "Complex 3 and 1," where he was "forced to take ice cold showers." (*Id*.) Plaintiff requested the facility to either (1) repair the heating system, (2) "transfer him to a house" with operable heat and hot water, or (3) transfer him to another facility with the same. (*Id*. at 4, 9.) Plaintiff also contacted the Prisoners' Legal Services of New York ("PLS"), which contacted Superintendent Perez and Downstate on Plaintiff's behalf

---

[4] Plaintiff's Complaint states: "I am seeking compensation for the amount of [$] 1,000,000.00." (Complaint (ECF No. 2) ("Compl.") at 4.) Even assuming Plaintiff intended to allege injunctive relief, that issue is moot given that he was paroled on March 17, 2016.

[5] On March 18, 2016, the Clerk's office notified the Court that Plaintiff was paroled on March 17, 2016.

complaining of the same. (*Id*. at 3, 7.) By letter dated February 9, 2016, PLS notified Defendant "about the cold cells [and] showers on [Plaintiff's] behalf and other inmates complaining about the same issues." (*Id*. at 3, 7.) PLS reiterated that Plaintiff had sent a complaint regarding the "unbearably cold temperatures" he had endured in the two cells he occupied at Downstate. (*Id*. at 7.) Since arriving on January 8, 2016, Plaintiff occupied two cells, both of which had "freezing cold temperatures" that required him to "sleep with multiple layers of clothes on and cover himself in three blankets."[6] (*Id*.) The letter also noted the cold-water Plaintiff endured "every time he [] shower[ed]." (*Id*.)

According to the Complaint, "nothing [was] done," to address the lack of heating in either Plaintiff's cell or the showers. (*Id*. at 3.) "After 16 days," without a "response from the Grievance Clerk," Plaintiff filed a level 2 notice of appeal with Superintendent Perez pursuant to "Directive 4040, Section 701.5(e)(1)." (*Id*.) On February 26, 2016, Plaintiff's appeal complained that no one had responded to his first grievance and that he had become sick as a result of the continued low temperatures in his cell, coupled with the freezing showers. (*Id*.) Rather than transfer Plaintiff to the infirmary, where there was working heat and hot water, the facility decided to quarantine him, meaning Plaintiff was locked in his "freezing cold cell" for three full days without leave to exit. (*Id*. at 11.) Plaintiff claims that the facility's decision to restrict him within a cold cell rather than the infirmary to recuperate further constitutes "cruel and unusual punishment." (*Id*.)

Plaintiff, who is seeking only monetary compensation, filed this lawsuit on March 11, 2016, originally naming as Defendants the Downstate Correctional Facility and Superintendent Perez. (*See* ECF No. 2.) Plaintiff was paroled on March 17, 2016, one day after filing this suit.[7]

---

[6] The documents submitted to the Court do not clarify why Plaintiff was moved between cells.
[7] On March 18, 216, the Court received a "staff note" via ECF from the Clerk's office informing it that Plaintiff had been paroled and was under the supervision of a parole officer.

3

On March 23, 2016, the Court dismissed Plaintiff's claims against Downstate because a correctional facility or jail is not a "person" within the meaning of Section 1983. (ECF No. 6.) Defendant filed the instant motion on October 29, 2016, (*see generally* ECF Nos. 15 & 16), which remains unopposed. The Court has not received any further correspondence from Plaintiff.[8]

**DISCUSSION**

**A. Applicable Legal Standards**

Although Defendant moves to dismiss the Complaint pursuant to both Rule 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim, none of her arguments actually related to the Court's subject matter jurisdiction.[9] In evaluating Defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Matteo's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or

---

[8] Court notes that on October 24, 2016, it received returned mail addressed to Plaintiff at Downstate. Almost to the year, Plaintiff has not yet updated his address or otherwise indicated where he can be reached.

[9] Defendant may have viewed Rule 12(b)(1) as the proper vehicle to argue that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (Def.'s Mem. at 5-7.) The exhaustion requirement, however, is not jurisdictional, but an affirmative defense that may be raised under Rule 12(b)(6) if, on the face of the complaint, it is clear plaintiff did not exhaust all remedies. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 101 (2006); *Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (per curiam).

her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Plaintiff here is proceeding *pro se.* Accordingly, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court must "construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alteration omitted). In other words, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Id.* (alteration in original) (internal quotation marks omitted).

Generally, in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts are limited to the facts alleged in the complaint and are required to accept these facts as true. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g., Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying rule to district courts).

In addition, because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition

memorandum, as long as the allegations are consistent with the complaint. *See, e.g., Braxton v. Nichols,* No. 08-CV-8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar.18, 2010); *cf. Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

### B. Section 1983

Liberally construed, Plaintiff's Complaint alleges claims under the Eighth and Fourteenth Amendments. Defendant contends that (1) Plaintiff's official capacity claims are barred by the Eleventh Amendment, (2) Plaintiff's claims are otherwise barred because he failed to exhaust his administrative remedies, (3) Plaintiff failed to allege Defendant was personally involved, (4) Plaintiff's Eighth Amendment claim fails as a matter of law, *and* (5) Defendant is entitled to qualified immunity. The Court will address each set of claims in turn.

Plaintiff's submissions clearly denotes an intent to bring claims pursuant to 42 U.S.C. 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."[10] *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle,* 471 U.S. 808, 816 (1985)). "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, No. 10-CV- 3937, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012). A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his constitutional

---

[10] Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010).

rights. *Ross,* 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). Additionally, where, as here, a plaintiff is seeking money damages against the defendants, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). Because Defendant alleges that, as a threshold matter, Plaintiff failed to sufficiently plead that Defendant was personally involved, the Court will address that issue first.

   1. *Personal Involvement*

Plaintiff has named Superintendent Perez as a defendant by virtue of her supervisory position in either the chain of command or the administrative review system for inmate disciplinary proceedings. Defendant counters that the Complaint is "patently insufficient as a matter of law" under *Colon v. Coughlin* because "all the Plaintiff alleges against Defendant Perez is that he 'wrote a letter to [her] about this matter.'" (Def.'s Mem. at 8.) In other words, Defendant posits that receiving two letters is insufficient to establish that she was personally involved in the alleged constitutional deprivation. Defendant supports the claim by pointing out that the doctrine of respondeat superior cannot be applied to Plaintiff's claims. *See Clark v. Gardner*, No. 17-CV-0366, 2017 WL 2691273, at *5 (N.D.N.Y. June 22, 2017) ("The doctrine of respondeat superior is inapplicable to [Section 1983] claims") (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). And "even if Plaintiff's letter could be deemed to provide notice to Defendant Perez … Plaintiff fails to allege that [Defendant] failed to take steps to remedy the wrong." (Def.'s Mem. at 8.)

Defendant is correct that, as with any claim brought under Section 1983, a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to award damages.

7

*Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."), *cert. denied*, 434 U.S. 1087 (1978)). Prior to *Iqbal*, the Second Circuit established that the personal involvement of a supervisory defendant may be shown by evidence that the defendant (1) participated directly in the alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning about it; (4) was grossly negligent in supervising the officers involved; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 501 (S.D.N.Y. 2012).

The Second Circuit has not squarely addressed how *Iqbal* affects the standards in *Colon* for establishing supervisory liability.[11] *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*.").[12]

---

[11] The Second Circuit recently observed, the limitation on supervisory liability in *Iqbal* "has, of course, engendered conflict within our own Circuit about the continuing vitality of the supervisory liability test set forth in *Colon* ...." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012); *see also Aguilar v. Immigration & Customs Enforcement Div.*, 811 F.Supp.2d 803, 814 (S.D.N.Y.2011) ("The Court of Appeals has not yet definitively decided which of the *Colon* factors remains a basis for establishing supervisory liability in the wake of *Iqbal,* and no clear consensus has emerged among the district courts within the circuit.").

[12] In *Iqbal*, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to … [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009). In so holding, the Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id*. at 677. Thus, the Court concluded that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. The Court went on to note that the required showing of personal involvement "will vary with the constitutional provision at issue"; as the plaintiff's claim in *Iqbal* was for "invidious discrimination" in violation of the First Amendment and Equal Protection Clause,

Whether the claim should proceed against Defendant here is a close question. The Complaint alleges only that Defendant received two letters from Plaintiff and failed to respond. Some courts have held that "mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." *Andino v. Fischer*, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (3d Cir. 1997)). To the extent Plaintiff is arguing that Defendant failed to properly supervise subordinates who were violating his rights, "the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." *Styles v. Goord*, 431 Fed. Appx. 31, 33 (2d Cir. 2011) (summ. order); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") But courts in this circuit have also held that "these decisions may overstate *Iqbal's* impact on supervisory liability," *see, e.g.*, *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009), given that *Iqbal* involved alleged intentional discrimination. *Iqbal*, 556 U.S. at 676 (2009). The Supreme Court specifically held that "[t]he factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Id*. "Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct of deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply." *Sash*, 674 F. Supp. 2d at 544 (S.D.N.Y. 2009); *see also D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010), *aff'd*, 462 F. App'x 79 (2d Cir. 2012).

---

"the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id*. at 676. Accordingly, the Court rejected the plaintiff's theory that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id*. at 677.

Ultimately, Plaintiff has demonstrated "a tangible connection between the acts of the defendant and the injuries suffered." *See Clark v. Gardner*, No. 17-CV-0366, 2017 WL 2691273, at *5 (N.D.N.Y. June 22, 2017) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The Court, in ruling on a motion to dismiss, must "take all facts and draw all inferences in the light most favorable" to the plaintiff, *Gross v. Rell*, 585 F.3d 72, 75 n.1 (2d Cir. 2009), and, as noted, must apply the alleged general failure to remedy the inadequate heating to Defendant, the facility's immediate supervisor. Assuming that all five *Colon* avenues to liability remain open to Plaintiff,[13] a reasonable jury could find that the inmate was subjected for a prolonged period to bitter cold through the cumulative effects of Defendant's acts and omissions; if true, that could indeed constitute a constitutional violation, *see Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (holding that summary judgment for defendants was precluded where prisoner was subjected to temperatures near or well below freezing in his cell for a five-month period); *see also Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (vacating a dismissal on the pleadings where the complaint alleged that prisoner was deliberately exposed to bitter cold for periods of twenty-one days or more while in solitary confinement); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (summary judgment for the defendants was appropriate because plaintiff failed to allege that his cell was open to the elements, lacked adequate heat, or that he had been subjected to "bitter cold"). Thus, The Court denies Defendant's motion to dismiss on these grounds.

2. *Exhaustion*

---

[13] District courts in this circuit have observed that the language of *Iqbal* would appear to foreclose the second, fourth, fifth, and part of the third avenues to liability outlined in *Colon*, but have expressed differing views on which of these five avenues to supervisory liability remain open to plaintiffs. *See, e.g.*, *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (assuming, that all five avenues remain open); *Rahman v. Fischer*, No. 08-CV-4368, 2010 WL 1063835, at *4-5 (S.D.N.Y. July 20, 2009) (holding that only the first and part of the third *Colon* avenues survived *Iqbal*); *Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939 (S.D.N.Y. June 26, 2009) (same).

The Prison Litigation Reform Act ("PLRA") bars a prisoner[14] from bringing a Section 1983 action related to prison conditions[15] unless "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Accordingly "the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth v. Churner*, 532 U.S 731, 738 (2001)).

In this case, plaintiff was required to comply with the DOCC's three-step Inmate Grievance Program ("IGP"), which directs an inmate to:

> (1) submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form[16]; (2) appeal to the superintendent within seven calendar days after receiving the grievance committee's written response[17]; and (3) appeal to the central office review committee ("CORC") within seven days after receipt of the superintendent's written response to the grievance.[18]

---

[14] Defendant does not argue that the PLRA's exhaustion requirement does not apply to him. However, the Court notes, that the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted or, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h); 28 U.S.C. § 1915(h). In this case, the actions that give rise to plaintiff's claims herein occurred while plaintiff was in the custody of the New York State Downstate Correctional Facility. Moreover, although plaintiff was released from custody during the pendency of this suit, he was detained and accused of criminal violations at the time that he filed his civil rights action. *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) "[I]ndividuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915."). Accordingly, plaintiff falls within the definition of a "prisoner confined in any jail" and was thus required to exhaust available administrative remedies – as available – pertaining to the conditions of such confinement. *See* § 1997e(a).

[15] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[16] *See* 7 N.Y.C.R.R. § 701.5(a).

[17] 7 N.Y.C.R.R. § 701.5(c)(1).

[18] 7 N.Y.C.R.R. § 701.5(d)(1).

Defendant argues that the Plaintiff did not comply with the IGP and that this action is therefore barred under the PLRA. (*See* Def.'s Mem. at 7.) Because failure to exhaust is an affirmative defense under the PLRA, a plaintiff's complaint need not allege that he has exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, a court may dismiss a complaint only if a plaintiff's failure to exhaust "is clear on the face of the complaint." *Id.*; *see also Smalls v. Jummonte*, No. 08-CV-4367 (DAB), 2010 WL 3291587, at *2 (S.D.N.Y. Aug. 13, 2010) ("Plaintiff was not required to plead or demonstrate his exhaustion of the DOC's established grievance procedure in his Complaint before this Court, and the fact that he did not plead exhaustion does not prove that he failed to exhaust."); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309 (JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011).

Here, Plaintiff's failure to exhaust is not clear on the face of the Complaint. First, the Complaint alleges that Plaintiff filed his grievance with the facility that his cell was made "unbearable" by the "extremely freezing air" and he was being "forced to take ice cold showers" in "Complex 3 and 1." (Compl. at 9.) "After 16 days," without a "response from the Grievance clerk," Plaintiff filed a level 2 grievance with the Defendant. (*Id*. at 11.) Plaintiff therefore asserts that his attempt to exhaust available administrative remedies by writing directly to Superintendent Perez comported with DOCCS procedural rules. At the very least, Plaintiff asserts that he completed levels 1 and 2 of the prison's grievance procedures. Despite Defendant's argument to the contrary, the Complaint is not completely clear as to whether Plaintiff properly grieved his claims pursuant to DOCC's level 3 procedures. Defendant argues that the "fact" that "[Plaintiff] failed to procced to step-3" "is clear from the face of the complaint." (Def.'s Mem. at 7.) However, even if Defendant was correct, that is not a valid basis for dismissal under *Jones v. Bock*, which does not require that the plaintiff demonstrate exhaustion in the complaint. *See* 549 U.S. 199, 216

(2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. We understand the reasons behind the decisions of some lower courts to impose a pleading requirement on plaintiffs in this context, but that effort cannot fairly be viewed as an interpretation of the PLRA."). The scope of the proper grievance procedure and whether the plaintiff followed that procedure properly should be determined on a motion for summary judgment under Rule 56, not a motion to dismiss under Rule 12(b)(6).[19] Because it is not clear from the face of Plaintiff's Complaint that he failed to exhaust his administrative remedies, and because Plaintiff plausibly alleges that Defendant engaged in conduct that may estop Defendant from raising the defense of non-exhaustion, *see Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (holding defendants may be estopped from arguing non-exhaustion where "[their] own actions inhibit[] the inmate's exhaustion of remedies"), the Court concludes that dismissal on this basis is not warranted at this stage. Accordingly, the Defendant's motion to dismiss the Complaint on the basis of the Plaintiff's failure to exhaust administrative remedies is denied.

3. *Eleventh Amendment Immunity*

As an initial matter, Plaintiff has sued Defendant Perez in her official capacity, seeking only monetary damages. (Compl. at 4.) It is well established that, absent abrogation by Congress, a state is immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44,

---

[19] The Defendant submitted a memorandum purporting to detail the relevant grievance procedures and to demonstrate the plaintiff's failure to follow those procedures. (*See* Def.'s Mem. at 6-7.) A district court has two options when presented with matters outside the pleadings in response to a Rule 12(b)(6) motion: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (internal citations omitted). If the Court were to treat this motion as a motion for summary judgment, the parties would be entitled to an opportunity to take discovery and submit additional relevant evidence, and the parties have not yet been allowed such an opportunity. *See Hernández v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009). The Court declines to convert this motion to dismiss into a motion for summary judgment, and, therefore, the Court cannot consider the materials that were not contained in the Plaintiff's Complaint. *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990).

54-56 (1996). This sovereign immunity extends to "arms of the state," including officers employed by agencies such as DOCS. A state officer may not be sued for damages in his or her official capacity under Section 1983 because (s)he is not considered a "person" within the meaning of the statute. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) (holding that a Section 1983 suit for money damages against a state official in his official capacity was barred by sovereign immunity). Thus, Plaintiff's Eleventh Amendment claim against Defendant Perez, in her official capacities, is dismissed. The Court grants Defendant's motion on this basis.

   4. *Eighth Amendment Claim (Conditions of Confinement)*

Plaintiff's Complaint, liberally construed, suggests two possible violations by Defendant of the Eighth Amendment's prohibition on cruel and unusual punishment. First, Plaintiff claims that for about two months during the winter Defendant deprived Plaintiff from heat within his cell. (Compl. at 2.) Second, Plaintiff contends that, he also failed to receive adequate hot water in the complex's showers. (*Id*.) Defendant argues that courts have "dismissed claims of inadequate heating for not presenting a sufficiently serious deprivation." (Def.'s Mem. at 10); *Scot v. Merola*, 555 F.Supp. 230, 233 (S.D.N.Y. 1983) (finding plaintiff's claim that he was "confined in substandard conditions in that his housing area had no heat, broken windows and the temperature dropped below 50 degrees," "f[ell] far short of describing conditions that are either "shocking to the conscience" or "barbarous.")[20] Defendant further argues that "courts have rejected claims that lack of hot water, without more, rises to the level of cruel and unusual punishment sufficient to state a 'conditions of confinement' claim." (Def.'s Mem. at 10.)

---

[20] Defendant notes Judge Gurfein's explanation that "allegations of general disorder, discomfort, and inconvenience … suggest the deprivation of no right 'secured by the Constitution and laws …' 42 U.S.C. § 1983. Federal courts simply cannot enforce the opening and closing of windows in cold weather, occurrences alleged to be in violation of constitutional rights." *Bussue v. Lankler*, 337 F.Supp. 146,149 (S.D.N.Y. 1972).

In order to successfully make out any Eighth Amendment claim, a prisoner must satisfy a two-part test, composed of an objective and subjective element. *See, e.g., Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). Objectively, the conduct at issue, evaluated "in light of contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted), must be "sufficiently serious … to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted). The subjective element requires the prison official accused of violating the Eighth Amendment to have possessed a "wanton state of mind" in carrying out the conduct at issue. *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) (internal quotation marks omitted). Conditions of confinement cases involve fact-intensive inquiries. *See, e.g.*, *Willey*, 801 F.3d at 68-69; *see also Trammel v. Keane*, 338 F.3d at 155, 163 (2d Cir. 2003) ("[T]he deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and competing institutional concerns.").[21]

Addressing the first element, the Court finds that the alleged conditions were sufficiently serious under the objective prong to establish a constitutional deprivation. Conditions such as extreme temperatures "must be measured by its severity and duration, not the resulting injury, and none of these conditions is subject to a bright-line durational or severity threshold." *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (rejecting the argument that a plaintiff must prove a serious injury in order to establish a constitutional violation due to inhumane conditions of confinement).

---

[21] Although the Second Circuit held in *Trammel*, 338 F.3d 155, that the fourteen days without a mattress and bedding, and seventeen days without toiletries or clothing in "bitter cold" are not sufficient deprivations for an Eighth Amendment violation, in that case, the court focused on whether deprivations were "reasonably calculated to correct [the defendant's] outrageous behavior." *Id*. at 165. Moreover, in that case the court found that the plaintiff had not shown deliberate indifference to his health and safety where the defendants "regularly observed [him] to ensure that his health was not jeopardized." *Id*. at 165.

Here, Plaintiff alleges that he endured "unbearably" "freezing air" during the two months he was incarcerated at Downstate. (Compl. at 9.) This allegation is in line with cases like *Gaston*, where the Second Circuit held that proof that the inmate was subjected "for a prolonged period to bitter cold" is sufficient to raise a triable issue of fact as to the objective prong of an Eighth Amendment conditions of confinement claim. [22] *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (finding that the plaintiff's exposure to freezing temperatures through the winter set forth an Eighth Amendment conditions-of-confinement claim); *see also Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (vacating a dismissal on the pleadings where the complaint alleged that inmates were deliberately exposed to bitter cold and deprived of basic hygiene products for periods of twenty-one days or more while in solitary confinement); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (summary judgment for the defendants was appropriate because plaintiff failed to allege that his cell was open to the elements, lacked adequate heat, or that he had been subjected to "bitter cold"). And even though it is true, as Defendant argues, that some district courts have found that allegations of exposure to cold temperatures for short period of time are insufficient to state a claim under the Eighth Amendment, *see Nelson v. Plumley*, No. 12-CV-0422 (TJM) (DEP), 2013 WL 1121362, at *9 (N.D.N.Y. Jan. 24, 2013) (collecting cases), "[t]he conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has a bearing on

---

[22] In *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988), for example, the Second Circuit reversed the grant of summary judgment in favor of defendants where there was evidence that the prisoner plaintiff had been deliberately exposed to bitter cold in his cell block for three months. *See also See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009) (affirming district court's conclusion that "exposure to extremes of temperature violated the detainees' constitutional rights"). *Accord Dixon v. Godinez*, 114 F.3d 640, 643–45 (7th Cir. 1997) (vacating summary judgment and remanding for determination of duration and severity of prisoner's exposure to cold); *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991) (vacating summary judgment where prisoner testified that he was denied basic sanitation items for two days and that his cell was frigid for 16 days during which he was denied bedding and all clothing except undershorts); *Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988) (vacating summary dismissal of claim that prisoners were exposed to winter cold due to broken windows).

another." See *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting the synergy between cold temperatures and the failure to provide blankets in establishing an Eighth Amendment violation).

While Defendant argues that the complaint of inadequate heating does not amount to a constitutional violation because "[Plaintiff] admits that he slept with clothing and blankets at the facility," (Def.'s Mem. at 10-11), specifically "multiple layers of clothes … [and] three blankets," (Compl. at 7), the alleged inadequacies of an inmate's confinement may be aggregated to rise to the level of a constitutional violation "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Thus, the Court finds that freezing temperatures within a cell, when coupled with other mutually enforcing conditions, such as "ice cold showers," (Compl. at 9), can rise to the level of an objective deprivation. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 127-28 (2d Cir. 2013) (collecting cases); *see also Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) ("An overcrowded cell, for example, may exacerbate the effect of unsanitary conditions. Similarly, poor ventilation may be particularly harmful when combined with an overflowing toilet.").[23] And because the Second Circuit recently reiterated that "serious injury is unequivocally not a necessary element of an Eighth Amendment claim," rather "the seriousness of the harms suffered is relevant to calculating damages," the Court need not determine whether Plaintiff alleges a "substantial risk" to his health or safety. (*See generally* Def.'s Mem. at 12.) Plaintiff's alleged illness as a result of enduring extreme temperatures speaks to damages, and not the absence of an objective constitutional deprivation.

---

[23] The Court notes that the Eighth Amendment analysis in *Darnell* relies principally on *Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015), a case which focuses on unconstitutional *unsanitary* conditions of confinement. But *Darnell* notes that while some of the challenged conditions, such as "extreme temperatures," did not necessarily fall within *Willey's* express ambit, "*Willey* was not breaking new ground, but rather reaffirming the law in this Circuit, and its reasoning applies to the other challenged conditions in the case." *Darnell v. Pineiro*, 849 F.3d 17, 31 (2d Cir. 2017). Thus this Court relies on the reasoning in *Darnell* to find that Plaintiff's allegations satisfy that objective element.

Turning to the second element, "traditionally referred to … as the subjective prong," and better described as the "*mens rea* prong" or "mental element prong," it is a close question whether Plaintiff has adequately alleged that Defendant acted with a sufficiently culpable state of mind. *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017). In cases involving prison conditions, the Supreme Court requires that a prison official's "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v.* Brennan, 511 U.S. 825, 834 (1994); *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). An official acts with deliberate indifference for denying an inmate human conditions of confinement when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. As the Court stated, "an official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. In other words, "a prisoner must demonstrate more than 'an inadvertent failure to provide adequate medical care' by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184.

Here, Plaintiff implies that Defendant acted with deliberate indifferent when she failed to take steps to expeditiously remedy the lack of heating in the facility, especially upon knowing that the inadequate heating made Plaintiff ill. (*See* Compl. at 3, 9-10.) He specifically alleges that he informed Defendant about the illness caused by the delay in heating. (*Id*. at 11.) Rather than quarantining Plaintiff in the infirmary, Defendant is alleged to have locked the inmate in "his freezing cell 24 [hours] a day for 3 days." (*Id*.) Plaintiff grieved the conditions and also attached to his complaint a letter written by a prison advocacy group alerting Defendant as to the same. (*Id*. 3, 7.) While the Court assumes, at this stage in the litigation, that Defendant was on notice upon

18

receiving the grievances from Plaintiff and the prison advocacy group, Plaintiff does not specifically allege that Defendant actually disregarded any such known risks to Plaintiff's health. Given this deficiency, the Court holds that Plaintiff does not sufficiently satisfy the *subjective* element of this claim. And because the Court subsequently finds that the alleged conditions were sufficiently serious under the *objective* prong as to establish a constitutional deprivation, the Court will dismiss Plaintiff's Eighth Amendment claim without prejudice.

## CONCLUSION

For the reasons given, Defendant's motion is GRANTED. Specifically, the Court has dismissed Plaintiff's Eleventh Amendment claim with prejudice and the Eighth Amendment claim without prejudice. The Clerk of Court is respectfully directed to terminate motion ECF No. 15 and close the case without prejudice, as to provide Plaintiff with leave to file an amended complaint within 60 days of this order. The Court will mail a copy of this Order to Plaintiff at Mohawk Correctional Facility, 6514 Rt. 26, P.O. Box 8451, Rome, New York, 13442, where he appears to be incarcerated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Dated: September 19, 2017
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

19